All right, Judge Rovner is now back, and so we will hear from Mr. Sigmund in case number three for today, Coexist Foundation against Fehrenbacher, and we will not have any argument from the appellee. Thank you. Good morning. May it please the Court, my name is Steve Sigmund, and I represent the appellant defendants, Mike Fehrenbacher and his corporations, Midwest Funding and United Funding. Mike Fehrenbacher certainly is a victim of the fraud and the deceit of the con man, Tim Hubman. So Mike Fehrenbacher doesn't come across to me in this record as entirely innocent himself, but I wonder if you could explain to me why when he decided to take what eventually turns out to be this $2 million, I guess it's $150, then it's $3, then it's $150, and then the other $1.85 come in. And he invests it with Assured Capital, which is a Florida company. Right. Why isn't that enough of an action in Florida on behalf of the Hubman entities to come under the Florida blue sky law, under the Florida securities law? Because all of his actions were done within Illinois. All of his meetings with Hubman were within Illinois. But what about the investment, though? I mean, when he invests with Assured, isn't that the transfer of money to Florida and a deliberate outreach to Florida? But to be actionable under this statute, his sale of securities has to have taken place within Florida. And in doing that, he's not selling securities. If he's violated the Florida security law by selling something to Hubman, that's the transaction between him and Hubman, not the transaction between him and Assured. So the transaction with Hubman, you see, is Hubman's depositing, we'll just call it the $2 million, in this supposed escrow account? Yes. Yes. And that did not take place in Florida. So one of the differences, to get into another point, between whether or not Assured was violating the Florida security laws and whether or not Fehrenbacher wasn't talking to Hubman, there's a few of them. And one of them is just that, that Assured was in Florida, so they violated in that way. Also, Assured certainly had consideration in that they kept all the money. Well, Assured did, but I guess what I keep thinking is, you know, suppose you thought of Fehrenbacher's transfer of all this money to Assured as being done as Hubman's agent. Doesn't that amount to an investment in a Florida company in Florida? On behalf of a Florida resident, might I add. Yeah. Well, the statute that he is accused of, or given civil liability for violating, again goes to selling a security. So I don't think by investing the money he is selling a security. I think the act of selling, if it's actionable, has to be the act of convincing somebody to make a transaction. So that's a different theory, that there's no sale, that when he pays money to them, that's somehow, you know, an investment or something. It's a purchase, actually, I suppose. Well, I think there's two different transactions here is the point that I'm making. One is the transactions where Hubman deposits the money with Fehrenbacher. Right, right. And that's in Illinois. We all understand that. That's in Illinois. And also for that, there's no actual contract the court found. And for that, there's no actual consideration. The court disagreed, but I don't think the evidence of consideration is there. Now, with the second transaction where Fehrenbacher then takes the combined money, his own money, along with Hubman's stolen money, and puts that with assured capital, that's a different transaction. And that is a transaction in Florida. That is a transaction in violation of the Securities Act. And that is a transaction that had consideration because assured kept it. But I don't think that's the same transaction as Hubman depositing the money into escrow with Fehrenbacher. That, I believe, is an Illinois transaction. And I attach the judge's ruling on partial summary judgment in the appendix because I think she specifically makes findings about all of the transactions between Fehrenbacher and Hubman taking place in Illinois. Earlier in the litigation, venue was transferred from Florida to Illinois. Earlier in the litigation, certain defendants were dismissed because they had no connections with Florida. And in an intermediate point, summary judgment was granted on many of these counts because actions weren't taking place in Florida. And I think the ruling sort of ignores that, and the ruling just doesn't ever touch on what the Florida transactions would be as between Fehrenbacher and Hubman. Would you remind me how long this $2 million stayed in the escrow account before the assured purchase happened? I think it was a matter of two or three months because first there was $125,000 and then $175,000 put in and $150,000 returned. And it seemed like they were waiting for another deal. And I think it's a matter of two or three months. So it's a little while. A little while, yes. How did Hubman's lie to Stewart result in a personal injury to Fehrenbacher if he would have sold the investment if the money had come from Hubman? Well, not a personal injury, but I think the question is, is he victimized by the deceit? And it's not just that Hubman stole the money from Stewart because that's not his only deceit. It's also the representation of who he is. So he represents to Fehrenbacher that he's made this money as a race car driver, that he knows the Bush family, that he has a private jet, that he has a friend Chip who needs a $25 million loan. It's the stolen money plus the representation, the misrepresentation of what money that is and how he got it and who he really is. Had Fehrenbacher known that he's dealing with a felon, had Fehrenbacher known he's dealing with someone already convicted of securities frauds with a long trail of civil fraud judgments and felony convictions and that the money had been stolen from an athlete, he certainly never would have gotten involved. But shouldn't he have been looking into all of this? Shouldn't he have done some research about, you know, when you're talking about these large sums? Probably he should have. But the question of whether he's victimized by the con, I think he certainly is. To make that point further, I want to segue into the issue of consideration because he's not a seller of anything without some type of consideration. And the only basis that the court has used is this flight where he asks on an e-mail that his family be considered for a flight down on spring break. He wants four in total, right? Well, he specifically says if I ever use the private jet for business purposes, I'll pay for it. It seems like he's just trying to make a wild vacation for his family. That doesn't really seem like consideration for a $2 million deal. Well, the e-mail says, as I have it from the record, next part of the compensation I want you to consider is a couple of domestic flights for me and my family, four in total, from DuPage. Two flights are to Florida. It gives some dates. One is to Hawaii and one is to Vegas. I ask that these flights are paid out of your dividends. So I think that's why the district judge thought that this was consideration. Well, he does use the word compensation. But back to my point that if this is the consideration, then he is certainly a victim of the duping. It's not just that he stole money because there was no private jet. He didn't have any of those friends. He didn't have this type of lifestyle. He conned Fehrenbacher into thinking that was such. And how is Fehrenbacher victimized by this man's cons? Well, he stands now a judgment debtor of almost $700,000. So it's a failure of consideration is what you're saying. That's a reason to set aside a contract. Well, not just that. I'm saying that if that's the consideration, his request for a flight on a private jet, he made that request because he was conned, because there was no private jet. He didn't have any of those things. So this is how Fehrenbacher is also a victim of Hubman's cons and lies, not just that he took the stolen money, but he himself, Fehrenbacher, was directly victimized by believing this stuff about the private jet, by working that into a request for consideration, and therefore now stands with a judgment against him that I don't think should be allowed to stand, based on lack of consideration, based on lack of Florida context, and based on the clean hands doctrine that this man was duped, that stolen money, and that to let this judgment stand would perpetuate and complete a crime. Now, before you sit down, I know you're really the wrong person to ask this of, but we checked the Florida business registry, and it looks like Coexist went out of existence for a while, but now has been reinstated as a corporation in Florida. And I gather Mr. Hubman's off in Switzerland. Is that correct? Yes and no. I'm wondering what you're going to get out of this, even if you were to, I guess you wouldn't have a debt to pay. I know a little bit about it because I made a motion to dismiss shortly before trial when I learned from checking myself that Coexist Foundation wasn't actually a corporation in good standing. We argued this issue, and the court did allow Coexist to come in on the day of trial, having rectified that. Right, according to the Florida records anyway, they're reinstated. Right, and that was a point I made before trial, that Coexist wasn't the only plaintiff in this case and wasn't actually an entity during the time the case was pending. The judge did decide prior to trial that the court would allow and did accept a last-minute reinstatement documentation of the corporation. And, of course, Mr. Hubman was at trial. He did seem to have scowned to Switzerland with some of this money as soon as he got it back and about the time the steward started asking where's the money. But he was in Chicago for the trial. Okay, well, thank you very much. Thank you, Your Honor. Since we have no argument for the appellee, we will take this case under advisement. Thank you.